N THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **IN RE: ABBOTT LABORATORIES,** *et al.***, PRETERM INFANT NUTRITION PRODUCTS LIABILITY LITIGATION** | MDL No. 3026 |
| | Master Docket No. 1:22 CV 00071 |
| **This Document Relates to:** | Judge Rebecca R. Pallmeyer |
| *Mar v. Abbott Laboratories*, Case No. 1:2022-cv-00232 | |

**Plaintiff's Response to Abbott's Motion to Clarify the Process for Presentation of Evidence that Might Implicate It's First Amendment Rights**

**I.     Background**

In a sign of what lurks just over the horizon, Abbott submitted a flurry of late-filed motions *in limine* asking the Court to exclude the FOIA emails (again), or in the alternative that Ms. Mar supply Abbott with a blueprint for her anticipated cross examination of Abbott's experts. ECF No. 79, PageID #9439; ECF No. 80, PageID #9444. The latest foray into Abbott's motion blizzard seeks "clarification" of this Court's Order governing the use of certain emails Ms. Mar obtained from FDA related to the Working Group's Report ("Report"). In doing so, Abbott claims Ms. Mar "admitted" the evidence is "out." ECF No. 79, PageID #9439. No one could plausibly read the transcript this way; in the very next sentence, which Abbott ignores, counsel said:

> The dispute that the plaintiffs are raising is one of substance. It is not one of the fact that the defendant sought to petition the government for relief. It is the implication by the evidence that we put forward that the defendant tried to influence the outcome of the relief they were seeking.

Tr. 60:18–22. In short, Ms. Mar intends to use the FOIA emails to evidence bias—a fact counsel made clear when he told the Court, "Because if these documents come in and the jury is allowed to read the press release, we're entitled then to challenge the authenticity, *or the bias*, rather, of those documents[.]" Tr. 52:13–16 (discussion on use of documents in relation to *Noerr-Pennington* doctrine). Nor was the Court confused about counsel's intention when it ruled. In commenting on Abbott's motion to exclude the '126 Patent under the *Noerr-Pennington* doctrine, the Court noted, "My sense is that so long as I'm satisfied by the foundation, the statements -- some of the statements in the patent are likely to be admissible." Tr. 39:21–23. Those statements, like the FOIA emails, include facts that evidence either notice or the witnesses' bias. Simply stated: there is no "confusion" regarding use of the FOIA emails; there is only regret that Abbott's interaction with the government biased the Report's outcome. Because bias is always relevant—particularly where Abbott's general causation experts intend to testify as to the Working Group's legitimacy—their argument is not well-founded and should be rejected once again.[1]

---

[1] Abbott's request for "clarification" is really a motion for reconsideration. Given Abbott did not endeavor to justify its motion under Fed. R. Civ. Pro. 59(e), it should be denied for this reason as well.

**II. Law and Argument**

**A. Ms. Mar did not "concede" the FOIA emails are "out"; Ms. Mar specifically told the Court she intended to use the evidence to establish bias.**

Defense correctly notes Ms. Mar's counsel said, "obviously the defendant has Noerr-Pennington rights, [it] can solicit the government" Tr.: 60:16–17. But in the very next sentence, Ms. Mar argued the dispute, "[i]s not one of the fact that the defendant sought to petition the government for relief." *Id.* at 60:21–22. Instead, it is whether a plaintiff may use communication with the government to establish bias. As such, Abbott's right to "solicit" the government *as a basis to establish liability* is "out." But that has no bearing on Ms. Mar's right to prove bias or impeach Abbott's witnesses. Thus, if Abbott chooses to "explore the fact that [three federal agencies] . . . endorsed" the Report's "findings," then Ms. Mar is entitled to explore whether those "findings" are biased—a fact the FOIA emails evidence. This Court heard—and ruled not once, but twice—that Ms. Mar may use this type of evidence to establish bias (Tr.: 39:21–23; 52:13–16; 62:11–14) and was well aware of Ms. Mar's intention when it ruled on Plaintiff's MIL. 4 and Abbott's MIL. 6. In doing so, this Court gave no indication it intended to limit Ms. Mar's use of these documents during cross examination.

*Noerr-Pennington* does not shield a witness from cross examination on credibility or bias, which are firmly within the bounds of permissible inquiry related to the Report. *Abernathy v. E. Illinois R.R. Co.*, 940 F.3d 982, 992 (7th Cir. 2019). No amount of citation to *Noerr-Pennington's* standard changes that fact. That is because bias is always relevant to a witnesses' credibility—a point Abbott's own expert Camilia Martin endorsed.[2] Put differently, if Abbott paid for a study and sought to rely on its favorable findings, Ms. Mar would unquestionably be entitled to cross-examine Abbott on that basis. *See Abernathy v. E. Illinois R.R. Co.*, 940 F.3d 982, 992 (7th Cir. 2019) (noting parties are allowed latitude to cross examine witnesses given bias is a "permissible and established basis of impeachment" and a "quintessentially appropriate topic for cross examination."); *United States v. Manske*, 186 F.3d 770, 777 (7th Cir. 1999); *United States v. Frankenthal*, 582 F.2d 1102, 1106 (7th Cir. 1978) ("Because the

---

[2] "Q: So I think we agreed before, early in the deposition, about the importance of reporting results in an unbiased way, and I believe you agreed that that's important? A: Yes." ECF No.: 614-50, Martin Tr. (vol. 1) 127:16-20; 137:7-17.

importance of evidence of bias or interest, inquiry into the area is never collateral, and a witness' denial of the facts constituting bias or interest may be rebutted with extrinsic evidence.") (cleaned up). Credibility and bias are always relevant and never collateral.

And if bias were not, in and of itself, a basis to justify the FOIA emails' use, Ms. Mar noted that Charlene Wong, an Associate Professor of Pediatrics at Duke University, is identified on several of the FOIA emails. *See* https://pediatrics.duke.edu/profile/charlene-wong. Although she is a Duke employee, she used a government email address to communicate with others at NIH, CDC, and FDA regarding the Report. Becker Decl., Ex. A. Why? Likely because Abbott believes the appearance that she is part and parcel of the government shields her from discovery. In fact, on May 12, 2025, an Atlanta state court is set to hear motion practice on whether certain Working Group members may evade a subpoena under the auspices they are "special governmental employees." *Abbott Laboratories et al v. Mlishia Irby*, Case No. 25-CV-2304**.** At the same time, two Abbott experts in this case are members of Duke's faculty (Dr. Brian Smith and Nurse Carter), and Dr. Larry Williams taught at Duke prior to joining Abbott as its Medical Director. That another Duke professor used a government email address to discuss the impending Report, at a minimum, creates the appearance of a conflict, further evidencing the threat of bias.[3]

None of the following is disputed: (1) on July 26, 2024, an Illinois plaintiff secured a $495 million verdict against Abbott; (2) on July 29, 2024, Abbott's CEO met with the FDA Commissioner; (3) on July 30, 2024, Mead Johnson's CEO met with the FDA commissioner; and (4) *fifteen days later* the Working Group met for the first time. Thereafter, the Working Group met three times between August 15 and 28, 2024, issuing its Report on September 16, 2024. It took *less than two weeks* to evaluate, debate, and come to a "consensus" on the available evidence. It takes months, if not years, to publish a single peer-reviewed article. The idea that an *ad hoc* Working Group, which was ostensibly the

---

[3] But that's not all. Kyle Diamantas, a former corporate Abbott lawyer—who participated in depositions in this MDL—is the new director for FDA's food division, which is the division that oversees infant formula. Christina Jewett, *He Fought Claims of Harm From Infant Formula. Now he Regulates It.*, N.Y. Times, (March 4, 2025), https://www.nytimes.com/2025/03/04/health/fda-infant-formula-kyle-diamantas.html. Mr. Diamantas even defended Abbott sales representatives as recently as March 2024. *Id.* This is the epitome of bias.

government's brain child comprised of dozens of scientists (with their corresponding heavy work schedules and limited availability) could be assembled in less than two weeks, create a mandate, review some 3,000-plus articles (according to Abbott) in less than 30 days, and then draft and edit a 100-page Report in less than 18 days, defies credibility—unless there was a preordained outcome.

Abbott knows *exactly* what Ms. Mar intends to do with the documents—cross-examine its experts' regarding the Report's reliability. It also knows *exactly* how the Court ruled; it simply dislikes the result. But disliking a result is not a basis to exclude evidence. The Court should reject Abbott's request for clarification.

### B. Abbott's motion is not a request for "clarification," but a motion for reconsideration. It does not satisfy Rule 59 and should be rejected.

Abbott's request for "clarification" is nothing more than a second bite at the apple. Rule 59(e) limits motions for reconsideration to newly discovered evidence or manifest errors of law. *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). Nothing in Abbott's motion remotely endeavors to satisfy these requirements. Instead, it merely rehashes the same arguments it made during the Final Pretrial Conference—where it lost twice. This Court's decision reflected the obvious (and correct) outcome: a witness may always be cross-examined to establish bias. Fed. R. Evid. 607. Abbott's Rule 59 motion disguised as a request for "clarification" should be denied.

### C. There is a vehicle to exclude the FOIA Emails—Abbott may choose not to rely on the Working Group Report at trial.

Trial requires lawyers to make hard choices. Abbott wants to introduce the Report through its experts because it believes the Report helps its case. But there is nothing that *requires* Abbott to use the Report; that is a choice. And choices have consequences. The consequence here is that introducing the Report through Abbott's experts entitles Plaintiff to cross-examine them on whether the Report's "findings" are biased (as she could do with any other uncredible or highly flawed study).

One way to avoid that consequence is to stipulate that neither party will rely on the Report or the FOIA emails. But Abbott cannot engage in the "heads I win, tails you lose" argument it makes seeking to use the Report without any risk its expert will be cross-examined on whether it influenced the Working Group's results. These facts are not imposing liability on Abbott for petitioning the

government—and Abbott knows it. Instead, they create an uncomfortable choice for Abbott: does the Report's benefit outweigh the risk that disclosing the FOIA emails will prove the Report is biased. Such a choice does not require "clarification" of this Court's prior Order; it requires Abbott to choose what it wants to do. Either way, precluding Ms. Mar from using the FOIA emails—which is Abbott's real intent, as it was in MIL No. 6 and its defense to MIL No. 4—is not justified under *Noerr-Pennington* or the Rules of Evidence. Accordingly, the Court should DENY the request for "clarification."

### III. Conclusion

Abbott's motion for "clarification" is nothing more than an effort to change this Court's prior rulings. There is no basis to do so. The FOIA emails are plainly relevant under FRE 607 to establish bias and challenge the Report's credibility. The motion also fails to even endeavor toward, let alone satisfy, Rule 59's criteria. And, if Abbott truly wants to stop the jury from seeing the FOIA emails, it could stipulate to drop all reference to the Working Group. This Court should deny the motion.

Dated: April 30, 2025                                             Respectfully submitted,

*/s/ Timothy J. Becker*                                           */s/ C. Andrew Childers*
Timothy J. Becker                                                 C. Andrew Childers
JOHNSON BECKER, PLLC                                              LEVIN, PAPANTONIO, PROCTOR, BUCHANAN,
444 Cedar Street, Suite 1800                                        O'BRIEN, BARR & MOUGEY, P.A.
St. Paul, Minnesota 55101                                         316 S. Baylen Street, Sixth Floor
(612) 436-1800                                                    Pensacola, Florida 32502
tbecker@johnsonbecker.com                                         (850) 435-7000
CO-LEAD COUNSEL                                                   achilders@levinlaw.com
                                                                  CO-LEAD COUNSEL

| | |
|---|---|
| */s/ Wendy R. Fleishman* | */s/ Diandra S. Debrosse* |
| Wendy R. Fleishman | Diandra S. Debrosse |
| LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP | DICELLO LEVITT LLP |
| 250 Hudson Street, 8th Floor | 420 20th Street N. Suite 2525 |
| New York, New York 10013 | Birmingham, Alabama 35203 |
| (212) 355-9500 | (205) 453-6415 |
| wfleishman@lchb.com | fu@dicellolevitt.com |
| CO-LEAD COUNSEL | CO-LEAD COUNSEL |

*/s/ José M. Rojas*
José M. Rojas
LEVIN, ROJAS, CAMASSAR & RECK, LLC
40 Russ Street
Hartford, Connecticut 06106
(860) 232-3476
rojas@ctlawyer.net
CO-LEAD COUNSEL