IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ABBOTT LABORATORIES, ET AL., PRETERM INFANT NUTRITION PRODUCTS LIABILITY LITIGATION | MDL No. 3026 |
| | Master Docket No. 1:22-cv-00071 |
| **This Document Relates to:** | Case No. 1:22-cv-00232 |
| *Ericka Mar, et al. v. Abbott Laboratories, Inc., et al.,* Case No. 1:22-cv-00232 | Hon. Rebecca R. Pallmeyer |

## DEFENDANT'S MOTION TO STRIKE DR. RANDAL BUDDINGTON

As invited by the Court, Abbott moves to preclude Plaintiff from calling Dr. Randal Buddington at trial. *See* Ex. 1 (4/17/25 Hr'g Tr.) at 133:17 ("I'll take any additional briefs you want to submit[.]"). *First*, substantial portions of his likely "fact" testimony concern irrelevant events that postdate RaiLee Mar's birth and are laden with hearsay. *Second*, despite Plaintiff counsel's assurances that he would not offer expert opinions, any "fact" testimony will almost certainly be based on Dr. Buddington's scientific, technical, and specialized knowledge as an animal researcher (particularly if he discusses the results, conclusions, or implications of his research), thus making it ***expert*** testimony. And *third*, Dr. Buddington's published article is hearsay without any exception. He is not an expert witness, so he cannot display the article or parrot any statements therein. Unable to offer any admissible fact testimony, Dr. Buddington should not be permitted to testify in this trial.

## BACKGROUND

In two earlier trials in Missouri state court, Dr. Buddington testified as a paid plaintiffs' expert witness. Plaintiff's counsel stated at the pretrial conference that Dr. Buddington testified only as a fact witness at one of those two trials. That was incorrect. Abbott's counsel handled

both trials. Dr. Buddington was, in fact, disclosed and offered as an expert witness in both trials. *See* Ex. 2 (*Gill* Trial Tr.) at 853:19-22 ("Q. Were all of the ***opinions*** that you offered here today to the jury to a reasonable degree of scientific certainty within your field? A. Yes, they are.") (emphasis added); Ex. 3 (*Whitfield* Trial Tr.) at 2711:17-22 ("Q. Okay. Doctor, were all of the ***opinions*** that you've been giving today based on a reasonable degree of scientific certain[t]y? A. Yes, they are. They're based on our own studies, and those of colleagues that are also doing research in this field.") (emphasis added).

Unlike in St. Louis, Dr. Buddington was not disclosed as an expert witness in this case, nor did he provide an expert report. He therefore cannot offer any expert opinions, which Plaintiff's counsel has assured he will not do. *See* Ex. 1 (4/17/25 Hr'g Tr.) at 131:14-15. During the pretrial conference, Plaintiff's counsel informed the Court that they instead intend to call Dr. Buddington as "a fact witness" to testify that "[he] had a contract with [Abbott], this is what they asked [him] to do, [he] did the work, here were the results, [he] published this article five years later after expiration of [his] NDA." *Id.* at 129:1-2, 132:21-24. But when Abbott's counsel sought to confirm that Dr. Buddington would not testify beyond the scope of these limited representations, Plaintiff's counsel declined to confirm. Ex. 4 (4/22/25 Email Chain Between Counsel). Given Dr. Buddington's previous testimony in Missouri state court, Abbott is concerned that Plaintiff will seek to elicit both (1) expert opinion while calling it "fact testimony" and (2) the kind of highly irrelevant, prejudicial, and inadmissible hearsay testimony he was called to offer in St. Louis.

## ARGUMENT

### I. Dr. Buddington has no relevant fact testimony to offer, and what he has offered elsewhere is riddled with hearsay.

Other than the irrelevant fact that Abbott hired him to conduct research on piglets, Dr. Buddington has no fact testimony to offer relating to events that predate RaiLee's death. But based

2

on his testimony elsewhere, Abbott anticipates that he will go beyond those limited and irrelevant facts, giving testimony that concerns events that postdate RaiLee's birth and that is riddled with hearsay. Here are two key examples.

**2015 Statement by an Unidentified "Somebody."** Sometime in 2015—over a year after RaiLee was born—Dr. Buddington was writing an article about some Abbott-financed pig research that he ultimately published three years later in 2018. During the St. Louis trial, with no supporting documentation, Dr. Buddington claimed that "[t]here was some feedback from Abbott that caused some softening of language" in some unidentified part of his draft that came from "***somebody*** in management [who] said these results will be bad for business." Ex. 5 (*Whitfield* Dep. Tr.) at 164:2-8, 250:12-13 (emphasis added); *see also* Ex. 3 (*Whitfield* Trial Tr.) at 2695:4-17. But Dr. Buddington did not even talk to the unidentified "somebody" and instead heard about it ***second-hand through*** his contact at Abbott. Ex. 5 (*Whitfield* Dep. Tr.) at 250:2-252:10.

That uncorroborated testimony about unspecified "softening" is not only irrelevant—including because it allegedly occurred years after RaiLee's birth—but it is also rank hearsay. "Statements of unknown individuals are hearsay and cannot be brought under a hearsay exception for admissions of party opponents." *O'Brien v. City of Frankfort*, 2018 WL 4620265, at *3 (S.D. Ind. Sept. 26, 2018) (citing *Indianapolis Minority Contractors Assoc., Inc. v. Wiley*, 1998 WL 1988826 at *17 (S.D. Ind. 1998), *aff'd*, 187 F.3d 743 (7th Cir. 1999)); *see also Cedeck v. Hamiltonian Fed. Sav. and Loan Ass'n*, 551 F.2d 1136, 1138 (8th Cir. 1977) ("That part of Murphy's statement which contains a reiteration of what someone told him is not admissible as an admission by party-opponent since the author of the statement is unknown.").

**Double Hearsay About an Unnamed NICU That Supposedly Solved NEC.** As another example, Dr. Buddington reached out to Abbott in 2020—again, years after RaiLee's

3

birth—with an idea for conducting an infant-formula clinical study in India (even though India does not allow such research). Dr. Buddington's account of how he came up with the idea for the study is littered with double hearsay: "A good friend of mine, a pediatric oncologist who I work with, was actually over in India, and then visited this very large NICU, where it was explained to him that when they were feeding the -- the regular preterm formula that includes glucose polymers, they had a very serious NEC problem. And, so, he decided to switch to a term formula, which, by the way, has only lactose in it. And when they did that, NEC basically was eliminated from that NICU." Ex. 3 (*Whitfield* Trial Tr.) at 2702:1–9; *see also* Ex. 2 (*Gill* Trial Tr.) at 837:22-844:24, 899:6-11.

In other words, an undisclosed "friend" visited an unnamed "large NICU" at some unknown time where some unnamed individuals said they solved "a very serious NEC problem" by eliminating a formula ingredient. Dr. Buddington's story is plainly rank hearsay (including double hearsay) and presents grave concerns of reliability given his claim that an unnamed NICU secretly solved the NEC problem without it being heard throughout the world. *See Paoli v. Wilkie*, 2018 WL 4635643, at *4, n.7 (N.D. Ill. Sept. 26, 2018) (finding a lieutenant's testimony about what he heard from another officer "inadmissible at trial because it is double hearsay" since the "lieutenant could not definitively recall who made the first-layer statement to him").

At the hearing, Plaintiff's counsel also claimed that Dr. Buddington "published [his 2018] article five years" after his study—actually seven—only when permitted to do so "***after expiration of [his] NDA***," implying that Abbott delayed his publication. Ex. 1 (4/17/25 Hr'g Tr.) at 132:21-24 (emphasis added). Not true. His NDA expired in 2015—three years before he published and a year after RaiLee's birth—and he's testified that nobody at Abbott ever asked him to "delay publishing the results" of his 2011 study even one day. Ex. 5 (*Whitfield* Dep. Tr.) at 209:16-19

4

("Q. So did anyone from Abbott ever ask you to delay publishing the results of your 2018 study longer than what you wanted to do? A. No.").

These are but three examples, but they demonstrate how and why any testimony about events after RaiLee's birth should be excluded, particularly when it is based on inadmissible, rank hearsay. *See Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 232 (7th Cir. 2021) ("Put simply, the findings of a 2018 report could not have put [defendant] on notice regarding its actions prior to 2018[.]"); *see also Stewardson v. Cass Cnty.*, 2023 WL 7183186, at *7 (N.D. Ind. Nov. 1, 2023) ("[E]vidence outside the time frame of the [incident] is irrelevant and prejudicial.") (quoting *Palmquist v. Selvik*, 111 F.3d 1332, 1339 (7th Cir. 1997)). Left only with the fact that Abbott hired him and that he conducted research in preterm piglets, it is unclear what, if any, relevant, and competent testimony Dr. Buddington could possibly offer in this trial.

**II. Testimony about his conclusions would inevitably be expert testimony unconnected to any treatment given in this case.**

Given his education and training, his scientific research for Abbott, and that he has testified twice as an expert witness in this litigation, it is highly probable that Dr. Buddington's testimony will cross the line into expert testimony. "Lay opinions and inferences—as compared with opinions and inferences of experts—may not be based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *Tribble v. Evangelides*, 670 F.3d 753, 758 (7th Cir. 2012). "Lay opinion testimony is admissible only to help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events." *United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002). Allowing a "fact" witness to stray into the realm of expert testimony is grounds for a new trial. *Tribble*, 670 F.3d at 758. For example, in *Tribble*, the Seventh Circuit ordered a new trial in a § 1983 action where a fact witness (an

5

Assistant State Attorney) with experience in a particular state court that handled criminal preliminary hearings was asked to "*summarize* her experiences . . . and *draw conclusions* about how, in general, she believed it operated." *Id.* (emphasis in original). The Seventh Circuit found these to be "textbook examples of opinion testimony" that a fact witness could not offer. *Id.*

Although Dr. Buddington might be able testify to the fact that he conducted research in preterm piglets in 2011—a fact that has no relevance in this case—he cannot summarize or explain his findings, nor can he offer any testimony about the consequences or implications of his research. Doing so would require "specialized explanations [and] interpretations that an untrained layman could not make if perceiving the same acts or events"—which he cannot do as a fact witness. *See Conn*, 297 F.3d at 554.

### III. Dr. Buddington's 2018 article is hearsay, and he cannot testify to its conclusions.

Finally, there can be no question that Dr. Buddington's research published in 2018 is hearsay. *See Mathis v. Carter*, 2017 WL 56631, at *4 (N.D. Ill. Jan. 5, 2017). While expert witnesses can rely on hearsay and routinely publish scientific articles to the jury during their examinations to help explain their opinions, Dr. Buddington is not an expert here. He should not be permitted to show the jury his publication or parrot any of the statements therein. And he certainly should not be able to bolster his own article with the trappings of an "expert" purportedly being called as a "fact witness." *Cf. Linkepic Inc. v. Vyasil, LLC*, 2019 WL 11717093, at *5 (N.D. Ill. Oct. 15, 2019).

### CONCLUSION

For all these reasons, the Court should preclude Dr. Buddington from testifying at trial.

Dated:  May 2, 2025                          Respectfully submitted,

*s/ James F. Hurst*

James F. Hurst
james.hurst@kirkland.com
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile:  (312) 862-2200

Stephen V. D'Amore
Linda T. Coberly
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601
(312) 558-5600
sdamore@winston.com
lcoberly@winston.com

Edward M. Carter (admitted *pro hac vice*)
**JONES DAY**
325 John H. McConnell Boulevard
Columbus, OH 43215
(614)281-3906
emcarter@jonesday.com
*Counsel for Defendant Abbott*

*Counsel for Defendant Abbott Laboratories*

## **CERTIFICATE OF SERVICE**

      I, the undersigned, hereby certifes that a true and correct copy of t the foregoing was served upon counsel of record through CM/ECF on May 2, 2025.

                                                                         */s/ James F. Hurst*

                                                              *Counsel for Defendant Abbott Laboratories*