**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: ABBOTT LABORATORIES, ET AL., PRETERM INFANT NUTRITION PRODUCTS LIABILITY LITIGATION** | **MDL No 3026** <br><br> **Master Docket No. 1:22-cv-00071** |
| **This Document Relates to:** <br><br> *Ericka Mar. v. Abbott Laboratories,* Case No. 1:22-cv-00232 | **Hon. Rebecca R. Pallmeyer** |
| **Plaintiff's Motion for Reconsideration of ECF No. 96 Under Rule 59** ||

**I.  Introduction**

Plaintiff asks the Court to reconsider its Order granting summary judgment based on evidence unavailable to the Court at the time it issued its decision on May 2, 2025. On May 1, 2025, Abbott deposed fact witness Dr. Naomi Bar-Yam, who directed the Mother's Milk Bank Northeast at the time of RaiLee's birth and death. She testified that the milk bank could have overnighted donor milk to RaiLee. And on April 23, 2025, Abbott deposed Anthony Mar (RaiLee's father and Ms. Mar's ex-husband). He testified that, had Abbott warned of the dangers of feeding formula to his daughter, he would not have allowed her to be fed Similac Special Care, even if her physician recommended it.

Moments before the Parties received electronic service of the Court's Order, the Plaintiff was finalizing a Supplemental Response to her Local Rule 56.1(a)(2) Statement. ECF No. 98. The Supplemental Response was being provided to alert the Court of factual matters that had been discovered after summary judgment was fully briefed and argued—some as recent as one day prior to the Court's Order. As detailed below, critical information was learned by the Parties that directly relates to the issues decided by the Court. This motion asks the Court to allow Plaintiff to supplement the record with the new testimony and asks the Court to reconsider its decision in light of this new evidence.

Page **1** of **10**

RaiLee's father's testimony (that he would have refused to permit Abbott's formula be fed to RaiLee had Abbott delivered a warning), combined with Dr. Bar-Yam's testimony (that donor milk was available to feed RaiLee), allows a jury to determine that the Abbott's failure to warn was the cause-in-fact of RaiLee's NEC. Based on this new evidence, Plaintiff asks the Court to vacate the judgment entry and amend its summary-judgment Order to reinstate Ms. Mar's failure-to-warn claim.

## II. Procedural Background

On January 24, 2025, Abbott filed its Motion for Summary Judgment. ECF No. 48. Plaintiff responded on February 28, 2025. ECF No. 51. Abbott replied on March 14, 2025. ECF No. 53. The Court heard oral argument on March 31, 2025. This Court entered its Order granting Summary Judgment on May 2, 2025. ECF No. 96. Notably, the Parties engaged in significant and meaningful discovery between the hearing and the decision. Specifically, the Parties took additional depositions of fact witnesses, whose testimony provides compelling new evidence for her failure-to-warn claims.

## III. Factual Background

### A. Deposition of Dr. Naomi Bar-Yam

By way of background, on March 18, 2025, Plaintiff offered Dr. Bar-Yam as a fact witness on the availability of donor milk and requested dates from Abbott in the "next couple of weeks" to complete the deposition. ECF No. 70-1. On March 25, Plaintiff wrote to defense counsel, provided a summary of Dr. Bar-Yam's anticipated testimony, and once again asked Defendant for deposition dates. ECF No. 70-2. On March 27, 2025, having received no dates from defense counsel, Plaintiff advised Defendant that she would simply call Dr. Bar-Yam live at trial. ECF No. 70-2. Then, on April 16, 2025, Defendant sought leave of the Court to serve third-party discovery and take Dr. Bar-Yam's deposition. ECF No. 70. The Court granted Abbott's request to depose Dr. Bar-Yam at the final pre-trial conference on April 18, 2025. ECF No. 76. Dr. Bar-Yam's deposition was taken on May 1, 2025. This Court entered judgment on May 2, 2025.

From 2006 to 2020, Dr. Bar-Yam was the director of Mother's Milk Bank Northeast. ECF No. 98-2, Bar-Yam Tr., 12:1–14. Using her particularized knowledge as an officer of a milk bank, she explained that Mother's Milk Bank Northeast could have supplied donor milk overnight to feed RaiLee at CAMC. *Id.* at 128:7–129:13; 131:19–132:3 ("**Could we have gotten [donor breast milk] to them within 24 hours—one way or the other we could have gotten it to them**."). In addition, she testified that during RaiLee's stay in the NICU, milk banks within her network existed in Columbus, Ohio (just a 2.5 hour drive from Baby RaiLee), in Indianapolis, Indiana (5 hours from RaiLee), and in Fort Worth, Texas (with the capacity to ship milk to infants in need). *Id.* at 119:25–120:20. Dr. Bar-Yam also testified that it is the practice of her milk bank, and milk banks within her network, to prioritize the distribution of milk to the most at-need infants: preterm infants. *Id.* 121:21–122:5. In other words, Baby RaiLee would have been at the top of their prioritization list. She further testified that she was not aware of any instance wherein a baby under 1,500 grams (like RaiLee) was unable to obtain donor milk. *Id.* 121:22-122:5; 123:17-20.

Dr. Bar-Yam's testimony confirms that there were options to feed RaiLee other than Similac Special Care; pasteurized donor milk was available and could have been shipped swiftly to CAMC.

### B. Deposition of Anthony Mar

Abbott deposed Anthony Mar, RaiLee's father, on April 23, 2025.[1] During his deposition, Mr. Mar testified that he recalled seeing a formula bottle with a metallic top.

> Q. Do you know how the formula was administered?
>
> A. A little plastic bottle with a big round top on it.
>
> Q. Okay.

---

[1] Anthony Mar is Ericka Mar's former husband. He is not and has not ever been a plaintiff in this case, nor is he under Plaintiff's or her counsel's control. Rather, in accordance with the Parties' Joint Agreed Scheduling Stipulation (ECF No. 55), on April 10, 2025, Plaintiff identified Anthony Mar as a witness she intended to call at trial. Ex. A, 4/10/2025 Email from Sara Papantonio.

> A. And that was before -- yeah, yeah. That was -- I think that's what it was. It had a silver thing on top of it too.

ECF No. 98-1 Anthony Mar Tr., 61:1–7. When he was shown a demonstrative of Similac Special Care 24, Mr. Mar confirmed that the bottle resembled what he had seen in the NICU.

> Q. Mr. Mar, when did you see that bottle [of Similac Special Care]?
>
> A. When -- in the NICU with my daughter.

*Id.* at 91:22–92:23. Anthony Mar saw the Similac Special Care bottle.

Mr. Mar testified, unequivocally, that if he had been warned of the risk of NEC associated with Abbott's preterm infant formula, he would not have allowed the product to be fed to his child:

> Q. And if you had been warned of the risk of formula relative to necrotizing enterocolitis, is there anything you think you would have done differently?
>
> A. Everything.
>
> Q. Can you give me a little bit better understanding?
>
> A. If I had been given that information, I would have pursued—and Ericka would have as well, I know she would have—different avenues to feed our daughter and to make sure she got the nutrition that she needed.

*Id.* at 90:6–17 (form objection omitted).

> Q: Having the information that you have today, if there had been nothing else available to feed RaiLee, would you have agreed with the doctor's decision to feed her that?
>
> A: ***No.***

*Id.* 96:21–97:1 (emphasis added).

It is a fair inference for a jury to draw that Anthony Mar would have seen a proper warning on the bottle and would have acted upon it. But Anthony provided even more direct evidence. When asked how RaiLee would have been fed, Anthony testified, "[t]hrough a donor system somehow, one way or another. They would have found a different way to feed my daughter, or I would have taken her to a different hospital." *Id.* at 91:6–9. Anthony continued,

> A. The formula—if I would have been given any kind of warning or—how they correlate together, NEC and the formula do, it wouldn't have been a question of what I would have done. That wouldn't have been allowed near my daughter.
>
> Q. You would have found a way?
>
> A. I would have found a way.

*Id.* at 91:11–17 (emphasis added).

But the Mars would not have had to go as far as taking RaiLee to a different hospital. The way to feed RaiLee, as Dr. Bar-Yam testified, was through donor milk that could have been delivered overnight to CAMC (before the remainder of Ms. Mar's expressed breastmilk that was in storage at CAMC had been fed to her daughter).

This dramatic and previously unavailable testimony was learned on the eve of trial and after summary judgment was fully briefed and argued. As noted, when the Court's decision was issued, Plaintiff's counsel was moments away from filing an amended Rule 56.1(a)(2) statement. This new evidence provides a basis for the jury to conclude that an adequate warning would have made a difference in RaiLee's treatment and that Abbott's failure to warn was the cause-in-fact of RaiLee's NEC.

## IV. Argument

### A. Motion to Reconsider

"Four grounds justify reconsideration under Rule 59(e): (1) an intervening change in the law; **(2) new evidence not available at the time of the original ruling**; (3) a clear legal error; and **(4) the prevention of manifest injustice.**" *Emerick v. Wood River—Hartford School District No. 15*, No. 16-cv-0788-MJR-RJD, 2018 U.S. Dist. LEXIS 249911, at *2-3 (S.D. Ill. Mar. 19, 2018) (emphasis added). "Motions to reconsider are disfavored, but a court may alter or amend its judgment if the moving party can 'clearly establish' that . . . newly discovered evidence precluded entry of judgment.'" *Janssen v. Reschke*, No. 17 C 8625, 2020 U.S. Dist. LEXIS 188834, at *16 (N.D. Ill. Oct. 13, 2020) (Pallmeyer,

J.) quoting *Sec. & Exch. Comm'n v. Goulding*, No. 09 C 1775, 2020 U.S. Dist. LEXIS 52157, 2020 WL 1445619, at *2 (N.D. Ill. Mar. 25, 2020). "[S]uch motions are 'reserved for circumstances where the moving party has shown "good reason" to set the judgment aside in the interest of justice.'" *Id.* at *17 quoting *Goulding*, 2020 U.S. Dist. LEXIS 52157, 2020 WL 1445619, at *2.

Plaintiff seeks reconsideration following testimony from two fact witnesses who were available and deposed just days before the Court granted summary judgment. Anthony Mar is not a party in this case. His deposition was taken on April 23, 2025, and the new evidence was discovered during that process. Mr. Mar's testimony is that he saw Similac Special Care bottles in the NICU. ECF No. 98-1, Anthony Mar Tr., 91:22–92:23. And had Abbott warned, he testified he would not have allowed Similac to be fed to RaiLee. Mr. Mar's testimony presents sufficient evidence such that a jury could find that a different warning would have resulted in different actions taken by RaiLee's parents.

The deposition of Dr. Bar-Yam was specifically authorized by the Court upon Defendant's motion. Dr. Bar-Yam's deposition was taken on May 1, 2025, just one day before this Court's order. Dr. Bar-Yam's deposition began at 9:07 AM CT. She remained on-the-record until 12:50 PM CT. After completing the deposition, Plaintiff's counsel shifted his attention to the Court's April 30, 2025 Order requesting additional information regarding Prolacta, which was due at 5:00 pm on May 1, 2025. ECF No. 82. On May 2, 2025, Plaintiff was moments away from filing her amended Rule 56.1(a)(2) Statement when this Court's Order granting summary judgment was entered.

Dr. Bar-Yam's testimony shows the availability of human donor milk to feed RaiLee in January 2014. Contrary to what Abbott argues, Dr. Bar-Yam testified that donor milk has always been available for the tiniest, most at-risk babies, like RaiLee. ECF No. 98-2, Bar-Yam Tr., 121:21–123:20. In fact, Mother's Milk Bank Northeast could have *overnighted* donor milk to RaiLee. *Id.* at 131:25–132:2. In addition, she testified that milk banks existed within hours of RaiLee. *Id.* at 119:25–120:20. Dr. Bar-Yam also testified that it is the practice of her network's milk banks to prioritize the distribution of

milk to the most at-need infants: preterm infants. *Id.* at 121:21–122:5. In other words, Baby RaiLee would have been at the top of their prioritization list. Dr. Bar-Yam's testimony presents sufficient evidence such that a jury could find that pasteurized donor milk was available to be fed to Baby RaiLee.

The testimony of Anthony Mar and Dr. Bar-Yam presents facts that preclude summary judgment. This Court should grant Plaintiff's motion to reconsider in light of the new evidence.

### B. New Evidence Sustains Plaintiff's Failure-to-Warn Claims.

On a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor," *Groh v. Ramirez*, 540 U.S. 551, 563 (2004) quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (alteration in original); *accord Cloutier v. Gojet Airlines*, 996 F.3d 426, 441 (7th Cir. 2021). "Determining what inferences from factual evidence are appropriate is a task quintessentially entrusted to the jury." *Id.* at 441; *see also Reinebold v. Bruce*, 18 F.4th 922, 927 (7th Cir. 2021)("A district court judge may not . . . decide which inferences to draw from the facts when ruling on a motion for summary judgment.").

Recent depositions of Anthony Mar and Dr. Bar-Yam sustain Plaintiff's failure-to-warn claim. Testimony from Anthony Mar is sufficient to prove that a warning would have made a difference at the summary judgment stage. Testimony from Dr. Bar-Yam is sufficient to prove that donor milk was available as an alternative nutrition source at the summary judgment stage. Anthony Mar and Dr. Bar-Yam's testimony presents new evidence that precludes judgment on Plaintiff's failure-to-warn claims.

This Court noted that "Abbott's more forceful [failure to warn] argument is that Plaintiff has failed to present evidence that an adequate warning would have made a difference in RaiLee's treatment." ECF No. 96 at 17. Central to this holding is the Court's finding that "[i]t is undisputed that there was no donor milk or Prolacta available at CAMC when RaiLee's diet was changed to a mixed feeding with SSC24." *Id.* at 18. In granting summary judgment, the Court reasoned that Dr. Maxwell would not have heeded a warning that Similac causes NEC, because he questioned "Well,

what else would we feed this baby? . . . [T]here was no option for donor's milk. You can't send babies home on donor's milk anyway, so we have no other option."[2] The court also reasoned that "Plaintiff did not review the packaging on SSC24 or any warnings and 'relied on RaiLee's NICU team' to make the best choice for feeding RaiLee." *Id.* at 19.

Anthony Mar stated, in no uncertain terms, that he saw the bottles of formula that were fed to RaiLee, and if he had been warned, he would not have allowed Similac Special Care to be fed to his daughter. ECF No. 98-1, Anthony Mar Tr., 90:6–17. As this evidence must be accepted as true at the summary judgment stage, a jury could reasonably infer, that had Abbott placed a warning on the bottle, Mr. Mar would have seen it and would have heeded it. Indeed, he testified that the product "wouldn't have been allowed near my daughter." *Id.* at 91:14-15.

Dr. Bar-Yam's deposition shows the availability of donor milk. ECF No. 98-2, Bar-Yam Tr. 128:12-129:13; 130:8-16; 131:19-132:3. Either she could have shipped it, Anthony could have driven to Columbus or Indianapolis to get it, or it could have been shipped from one of the other milk banks in Dr. Bar-Yam's network. That is enough to survive summary judgment.

### C. Ms. Mar was in the process of supplementing the record with the testimony of Anthony Mar and Dr. Bar-Yam when the Court ruled.

Ms. Mar is providing the Court with this new evidence at the earliest opportunity. She regrets that she did not finalize her intended supplement to her Rule 56.1(a)(2) statement before the Order granting summary judgment was docketed, and respectfully requests that the Court consider the same when deciding this Motion.

---

[2] For purposes of clarity, Plaintiff does not argue that RaiLee should have gone home on donor milk. Plaintiff and her experts assert that cow's-milk based preterm formulas should not have been fed to RaiLee while she was being treated for prematurity in the NICU. After that, RaiLee could have been safely transitioned to a formula product. In other words, RaiLee only required a limited amount of human milk-based nutrition to get out of the danger zone.

Page **8** of **10**

**V.      Conclusion**

Plaintiff respectfully requests that the Court vacate ECF No. 97, permit Plaintiff to supplement the record with this new testimony, and amend ECF No. 96 to deny Abbott's motion for summary judgment as to her failure-to-warn claim.[3]

---

[3] In seeking reconsideration as to these new facts, Plaintiff does not waive any other arguments as to the summary judgment Order.

**Respectfully submitted,**

*/s/ José M. Rojas*
José M. Rojas
LEVIN, ROJAS, CAMASSAR & RECK, LLC
40 Russ Street
Hartford, Connecticut 06106
(860) 232-3476
jose@LRCR.law
*Counsel for Plaintiff Ericka Mar, As Administratrix
of the Estate of RaiLee Mar*