**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: ABBOTT LABORATORIES, ET AL., PRETERM INFANT NUTRITION PRODUCTS LIABILITY LITIGATION | MDL NO. 3026 <br><br> Master Docket No. 22 C 00071 |
| This Document Relates to: <br><br> *Mar v. Abbott Laboratories* <br> Case No. 22 C 00232 | Hon. Rebecca R. Pallmeyer |

**MEMORANDUM ORDER**

Plaintiff Ericka Mar is one of hundreds of plaintiffs in this multidistrict litigation ("MDL") who has alleged that Abbott Laboratories ("Abbott") produced a cow's-milk-based infant formula that caused her prematurely-born infant, RaiLee, to develop necrotizing enterocolitis ("NEC"). Her case was selected as the first bellwether to proceed to trial in May 2025. Days before trial, however, this court granted summary judgment in favor of Abbott, concluding that the factual record was insufficient to support a jury verdict in favor of Plaintiff on her state law failure-to-warn and design defect theories. *In re Abbott Lab'ys, et al., Preterm Infant Nutrition Prods. Liab. Litig.*, No. 22 C 00071, 2025 WL 1282749 (N.D. Ill. May 2, 2025) (hereinafter "Summ. J. Order"). Specifically, the court noted that Plaintiff had failed to present sufficient evidence of a feasible alternative to Abbott's cow's-milk-based products necessary for her design defect claims, nor had she presented evidence that a proper warning would have resulted in a change of circumstances or treatment for RaiLee. (*See generally id.*) After entry of the court's ruling, Plaintiff proposed to present "new evidence" supporting her claims and sought reconsideration of the May 2 Order under Federal Rule of Civil Procedure 59(e). (Pl.'s Mot. [100].) For the reasons described here, Plaintiff's motion provides no basis to disturb the court's prior judgment.

Rule 59(e) directs that a "motion to alter or amend a judgment" to be filed "no later than 28 days after the entry of the judgment." FED. R. CIV. P. 59(e). Reconsideration of a judgment on the merits under Rule 59(e) is an "extraordinary remed[y] reserved for the exceptional case."

*Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008).  "To establish relief under Rule 59(e), a movant must demonstrate a manifest error of law or fact or present newly discovered evidence." *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014) (quoting *Boyd v. Tornier, Inc.*, 656 F.3d 487, 492 (7th Cir. 2011)) (quotation marks omitted).

In seeking reconsideration of the court's summary judgment order, Plaintiff does not identify errors of fact or law, but instead refers to newly-discovered "testimony from two fact witnesses who were available and deposed just days before the Court granted summary judgment." (Pl.'s Mot. at 6.)  The first witness is Dr. Naomi Bar-Yam, director of Mother's Milk Bank Northeast (outside Boston, Massachusetts) at the time of RaiLee's birth (in West Virginia). At her deposition, taken by Abbott's counsel on May 1, 2025, Dr. Bar-Yam testified about human-milk banks in locations near RaiLee's hospital that could, in her opinion,[1] have provided donor milk to feed RaiLee.  (Bar-Yam Dep. [98-2] at 119:25– 120:20.)  She further testified that her own milk bank, located and serving hospitals in New England, could have gotten donor milk to RaiLee's hospital in West Virginia "within 24 hours." (*Id*. at 131:25–132:3.)  Plaintiff contends that Dr. Bar-Yam's testimony "confirms that there were options to feed RaiLee other than" Abbott's formula that could have been provided, had Abbott properly warned of the risk of NEC.  (Pl.'s Mot. at 3.) Plaintiff's second proposed witness is Anthony Mar, Plaintiff's Ericka Mar's ex-husband and RaiLee's father, who was present at the hospital during RaiLee's treatment.  Anthony Mar was deposed on April 23, 2025, and testified that if he "had been warned of the risk of formula relative to necrotizing enterocolitis," he and Ericka "would have pursued . . . different avenues to feed our daughter and to make sure she got the nutrition that she needed." (Anthony Mar Dep. [98-1] at

---

[1] Though the court does not resolve the issue here, it notes that there is a dispute about whether Dr. Bar-Yam's testimony was properly disclosed as fact-witness testimony, rather than expert testimony.  Her testimony relating to the supply and capabilities of her own milk bank network would constitute lay testimony; to the extent Plaintiffs would have Dr. Bar-Yam opine on the ability of milk banks outside of her network to deliver donor milk to RaiLee's hospital, however, reasonable objections under Federal Rules of Evidence 701 and 702 would arise.

2

90:6–17.) Plaintiff urges that this testimony is evidence that a proper warning would have made a difference: Anthony Mar would have taken steps to ensure that RaiLee received feeding "[t]hrough a donor system somehow . . . . [O]r I would have taken her to a different hospital." (*Id.* at 91:6–9.)[2]

Dr. Bar-Yam's and Anthony Mar's testimony might be characterized as "new" in the sense that it was not in the record at the time of the court's order, but their testimony cannot be fairly understood as "newly discovered" under Rule 59(e). Dr. Bar-Yam's proposed testimony has been known to Plaintiff since at least March 18, 2025, when—seven months after the close of fact discovery—Plaintiff disclosed to Abbott that she intended to call Dr. Bar-Yam to testify as a fact witness at trial. (*See* Abbott Mot. to Allow Third-Party Disc. [70] at 1.) Plaintiff provided Abbott with a summary of Dr. Bar-Yam's proposed testimony by email on March 25, 2025. (*See* March Email Corr. [70-2] at 3.) But Plaintiff's summary judgment submissions made no mention of Dr. Bar-Yam, did not describe or refer to her expected testimony, and did not even suggest the possibility that milk from out-of-state donor banks might have been a plausible alternative for feeding RaiLee. Plaintiff now tries to lay blame for the delay in offering Dr. Bar-Yam's testimony on Abbott's proposing "no dates" for her deposition after the March 18 disclosure (*see* Pl.'s Mot. at 2), but to the court's understanding, there would have been no deposition at all had Abbott not moved to re-open discovery for this purpose (*see* Abbott Mot. [70]). In any event, Plaintiff had no need to rely on her opponent's discovery efforts, as she herself had access to this witness and could have submitted Dr. Bar-Yam's evidence, now deemed "critical" (Pl.'s Mot. at 1), by way of a declaration or affidavit.

The same is true of Anthony Mar's testimony. As Abbott notes, Anthony Mar (while not a party) has obviously been known to Plaintiff as a potential witness since the inception of the case.

---

[2] The court observes that both Anthony Mar's and Dr. Bar-Yam's proffered testimony address Plaintiff's failure-to-warn claims. Neither witness's testimony addresses the deficiencies the court has observed in Plaintiff's design defect claims.

Plaintiff announced her intention to call Anthony Mar as a live witness at trial in an email to Abbott dated April 10, 2025 (*see* April Email Corr. [100-1]) and his deposition was scheduled shortly after. Why Plaintiff waited for Abbott to depose Anthony Mar's testimony a week before trial remains a mystery, but it cannot be said that this testimony was "newly discovered" after the court's order—Plaintiff expressed her intention to call him as a live witness nearly a month before the May 2 order. It bears emphasis: Dr. Bar-Yam and Anthony Mar are Plaintiff's *own* witnesses, disclosed to Abbott in the final hour but known to Plaintiff long before. If their testimony was so significant as to defeat summary judgment, as Plaintiff now suggests, she offers no explanation for her own delay in putting that testimony in the summary judgment record.

In any event, it is not clear to the court that the additional evidence Plaintiff now seeks to introduce would alter the result here. Dr. Bar-Yam would testify that donor milk, from her milk bank or another, could have feasibly been transported to CAMC (the hospital where RaiLee was treated), but RaiLee's own physician did not see it this way; he testified that "there was no option for donor's milk" at CAMC. (Maxwell Dep. [52-2] at 91:20–92:5.) The question for Plaintiff's case has never been whether donor milk banks exist or whether it was technically possible to ship donor milk from Boston to West Virginia, but whether donor milk was an option *at CAMC* at the time of RaiLee's birth. Dr. Bar-Yam admitted in her deposition that she had no contact with CAMC, with RaiLee's treating physicians, or with RaiLee's parents in 2014. (Bar-Yam Dep. at 17:18–22:4.) The theory, suggested for the first time on reconsideration, that an adequate warning would have resulted in Plaintiff or the physicians at CAMC getting in touch with Dr. Bar-Yam's New England-based donor milk bank is plainly speculative and unsupported by Dr. Maxwell's and Plaintiff's own prior testimony.

Anthony Mar's testimony also does not move the needle. Plaintiff has identified lines in his deposition where he forcefully states that, had he been adequately warned, he would have taken steps to feed RaiLee without resorting to formula. But Anthony Mar also made a critical admission: he did not observe the packaging of the Similac that RaiLee was fed in the NICU:

4

> Q. Ms. Mar testified she never saw any of the packaging or labels for the formula that RaiLee was administered, and I assume you didn't either. Is that right?
>
> MR. ROJAS: Objection.
>
> A. I did not. No.
>
> Q. Okay. Sorry. I'll re-ask the question. Did you see any of the packaging or labeling for the formula that RaiLee was administered?
>
> A. No specific labels or packaging, no.

(Anthony Mar Dep. at 62:17–63:2.)[3] In the absence of any direct communication between Abbott and Plaintiff, Plaintiff's failure-to-warn theory relies on her claim that Abbott should have included a stronger warning on the risk of NEC on the labeling and packaging of the formula products. (*See* Summ. J. Order at *9.) Anthony Mar, like Plaintiff herself, admits that he never saw the packaging on the products used to feed RaiLee. Mr. Mar surely would not have exposed his child to an unnecessary risk, but unless he observed the labeling and packaging of the product in question, his testimony does not support the argument that a different warning would have led to a different outcome for RaiLee.

Finally, a word on "manifest injustice." (*See* Pl.'s Mot. at 5 (highlighting "prevention of manifest injustice" as a basis for reconsideration).) Plaintiff's case was chosen as a bellwether on October 25, 2023. (*See* Order [19].) On June 6, 2024, the court adopted the parties' proposed scheduling order, closing fact discovery for Plaintiff's case on August 9, 2024, and setting the deadline for summary judgment briefing for January 24, 2025 (Abbott's brief), February 28, 2025 (Plaintiff's response), and March 14, 2025 (Abbott's reply). (*See* Scheduling Order [520] in No. 22 C 71.) Plaintiff had sufficient time to develop the record and to prepare or supplement her summary judgment materials and did not advise the court of a need to supplement those

---

[3] In Plaintiff's attempt to supplement her Rule 56.1(b)(2) response, filed in conjunction with her motion for reconsideration, she curiously ignores this testimony when stating that "Anthony Mar, RaiLee's father, saw the Similac Special Care 24 packaging when it was fed to RaiLee in the NICU." (*See* Pl.'s 56.1 Supplement [98] ¶ 43.) The only citation Plaintiff offers for this statement is to a portion of Anthony Mar's deposition where he identifies a bottle of Similac as looking "similar" to "[a] formula bottle in the NICU." (Anthony Mar Dep. at 89:10–21.)

materials, not even during oral argument on the motion. The court finds no basis—either in the circumstances behind Plaintiff's "discovery" of Anthony Mar and Dr. Bar-Yam's testimony or in the substantive value of the testimony—to award the extraordinary remedy of reconsideration.

## CONCLUSION

Plaintiff's motion for reconsideration [100] is denied.

ENTER:

Dated: August 11, 2025

_____
REBECCA R. PALLMEYER
United States District Judge